UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JENNY ANN GIANNATTASIA,                      :
                                             :          **MEMORANDUM & ORDER**
                            Plaintiff,       :
                                             :          09-CV-0062 (ENV)(MDG)
            -against-                        :
                                             :
THE CITY OF NEW YORK, OFFICE OF THE          :
DISTRICT ATTORNEY RICHMOND COUNTY,           :
                                             :
                            Defendants.      :
-------------------------------------------------------------- x

**VITALIANO, D.J.**

Plaintiff Jenny Ann Giannattasia commenced this action against the City of New York

alleging employment discrimination, retaliation, and a hostile work environment in violation of

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 et seq. Defendants

now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the motion is denied.

## I.   BACKGROUND

The following facts are drawn from the complaint and the submissions of the parties on

defendants' motion, including the statements of undisputed material fact filed by all parties

pursuant to Local Civil Rule 56.1. The facts are construed, as they must be in the summary

judgment context, in the light most favorable to Giannattasia as the nonmoving party. See

Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007). Any

factual disputes are noted.

Giannattasia was first employed by the Richmond County District Attorney's Office

("RCDA") in March 2001 as a paralegal. (See Karlin Decl., at ¶ 2.)[1] She was initially assigned to the Sex Crimes/Special Victims Bureau ("SCSV"), funded under a federal grant known as the Violence Against Women's Act ("VAWA"). (Id.) Giannattasia attained the title Domestic Violence Case Coordinator in accord with VAWA specifications. (Id.) Her duties involved reaching out to victims of domestic violence, ensuring that paperwork was correctly filed, providing information to victims regarding which Assistant District Attorney was assigned to their case, and making sure victims were in safe living environments. (Zinaman Decl., at ¶ 5.)[2] Plaintiff remained in this position until December 2, 2004, when she was involved in an accident. (Id. at ¶ 6.) Giannattasia testified that, as she was turning the corner outside her office building, a teenage boy fell from a ledge onto her head. (Id. at ¶ 7.) Her complaint alleges that she is currently suffering from numerous disabling conditions as a result of the accident, including "AC joint separation, rotator cuff and glenoid labrum tears, nerve impingement, carpal tunnel syndrome, tendinitis, herniated disc(s) in the cervical spine, degenerative discs in the lumbar spine, sciatica, plantar faciitis and other disabling conditions." (Compl., at ¶ 8.) After the accident, Giannattasia filed a workers compensation claim and was out for one year, from December 3, 2004 to December 5, 2005. (Zinaman Decl., at ¶ 12.)

Plaintiff returned to work on light duty status with certain restrictions.[3] (Id. at ¶ 16.)

---

[1] References to "Karlin Decl." denote the declaration of Stewart Lee Karlin in opposition to defendant's motion for summary judgment.

[2] References to "Zinaman Decl." denote the declaration of Jamie M. Zinaman in support of defendant's motion for summary judgment.

[3] A letter from Giannattasia's physician contained the following restrictions: "no heavy lifting, no excessive bending or walking, especially up and down stairs or steep inclines/declines." (Zinaman Decl., at ¶ 12.) Plaintiff states there were other restrictions including "no repetitive writing" due to carpal tunnel syndrome, and standing and sitting limitations. (Karlin Decl., at ¶ 16.)

Shortly after returning to work, plaintiff was reassigned from Supreme Court to Criminal Court. (Id. at ¶ 15.) Chief of Administration at RCDA, Ronald Carara, testified that Giannattasia was transferred because "the greatest need in the office was for an advocate in the Criminal Court Bureau" and "plaintiff had been a good victim advocate before going out on leave." (Id. at ¶ 18.) In April 2006, the grant that funded Giannattassia's position was discontinued; from that point on, her position was funded by a grant from the Crime Victims Board ("CVB"). (Id. at ¶ 25.) In connection with the funding stream change, Giannattassia was notified that her primary job responsibilities would be to "insure that victims receive[d] their orders of protection in a timely manner, prepare envelopes for mailing, solve problems regarding addresses, and provide follow up response[s] to phone calls and walk-ins." (Id. at ¶ 28.) In addition, her tasks also included "assisting ADAs with the interview process . . . , accompany[ing] victims to court when deemed necessary, . . . inform[ing] victims of case status, and recommend[ing] services that victims may be entitled to." (Id. at ¶ 30.)

Giannattassia signed off on the new performance expectations on June 13, 2006, though putting her supervisors on notice about her disability. (Id. at ¶ 32.) Shortly thereafter, she requested assistance with the preparation and mailing of orders of protection. (Id. at ¶ 34.) Plaintiff testified that carpal tunnel syndrome affected her ability to perform repetitive tasks, including writing or typing for long periods. (Id. at ¶ 35.) She also had problems picking up log books and manually recording orders of protection in the log book. (Karlin Decl., at ¶ 35.) RCDA denied plaintiff's request for accommodation because she "failed to provide sufficient medical documentation and [could not] assist plaintiff with additional manpower." (Zinaman Decl., at ¶ 38.) To be precise, Giannattassia claims she provided specific medical documentation of her injuries and relevant limitations but that RCDA still concluded that the documentation

3

"was not sufficient to obtain the accommodation plaintiff requested." (Id. at ¶ 39-40.) In total, plaintiff's doctor sent at least four letters to RCDA regarding Giannattasia's carpal tunnel syndrome. The first letter was sent on June 3, 2006; two others followed on January 16, 2007 and April 12, 2007.

After communicating with Giannattassia's doctor, RCDA developed a program, which allowed envelopes to be fed into a printer, eliminating the repetitive motion and need for addresses to be hand-written. (Id. at ¶ 45.) Nonetheless, the new process, which was implemented ten months after plaintiff's request, still required repetitive motion by Giannattassia because she had to type the addresses and stuff the envelopes. (Karlin Decl., at ¶ 45.) Given the unsuccessful change in work conditions, Giannattassia notified her Bureau Chief that she was unable to complete her task of sending out a certain number of orders of protection on a daily basis. (Id. at ¶ 48.) The orders that she could not complete were mailed out by Safe Horizons, an organization that worked with RCDA. (Id. at ¶ 50.)

At or around the same time, plaintiff claims that she began receiving weekly insubordination letters, was isolated from coworkers, was required to provide typewritten medical notes, and was repeatedly harassed by supervisors. (Plt.'s Mem. in Opp., at 21-22.) Giannattassia ultimately resigned from her position on May 25, 2007. (Zinaman Decl., Ex. AA.) She filed an action with the United States Equal Employment Opportunity Commission ("EEOC") on October 15, 2007. (Zinaman Decl., Ex. CC.) This case arises in the aftermath.

## II.  DISCUSSION

### A. Summary Judgment Standard

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. See George v. Reisdorf Bros., Inc., 10-CV-0798, 10-CV-1208, 2011 U.S. App. LEXIS 2296, at *3 (2d Cir. Feb 3, 2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . . [s]ince a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.  If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted).

The Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment" in employment discrimination cases, where intent of the employer is usually a central factual issue.  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996); see Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  "Moreover, as discrimination will seldom manifest itself overtly, courts must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999) (quotations omitted).  Notwithstanding, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001).  That is why "a plaintiff must provide more than conclusory allegations of discrimination to defeat" a summary judgment motion.  Schwapp, 118 F. 3d at 110; see Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

**B.  Timeliness of Plaintiff's Claims**

Plaintiff alleges that RCDA discriminatorily refused her requests for reasonable accommodation, retaliated against her for seeking reasonable accommodation, and subjected her to a hostile work environment.

As a preliminary matter, the ADA requires claimants "to file a charge of discrimination

6

or retaliation with the [EEOC] within 300 days of the discriminatory or retaliatory act."

Valtchev v. City of New York, 400 F. App'x. 586, 588 (2d Cir. 2010); see 42 U.S.C. § 12117(a).

However, "[a]n exception exists for claims that the discriminatory acts were part of a continuing

policy and practice of prohibited discrimination," id., or "where specific and related instances of

discrimination are permitted by the employer to continue unremedied for so long as to amount to

a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). In

these cases, if a plaintiff files a charge that is "timely as to any incident of discrimination in

furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that

policy will be timely even if they would be untimely standing alone." Lambert v. Genesee

Hosp., 10 F.3d 46, 53 (2d Cir. 1993). Additionally, it is worth noting that the timeliness of a

claim under the ADA differs dramatically depending on whether a plaintiff alleges

discrimination or a hostile work environment. See Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 122 S. Ct. 2061 (2002). Accordingly, plaintiff's continuing violation claim will be

evaluated separately as it relates to each cause of action.

    1. Failure to Accommodate, Retaliation & Termination

    First, "[t]he continuing violation doctrine has generally been limited to situations where a

specific discriminatory policy or mechanism has been alleged." Lukasiewicz-Kruk v.

Greenpoint YMCA, No. 07-CV-2096 (ARR) (LB), 2009 WL 3614826, at *6 (E.D.N.Y. Oct. 30,

2009), aff'd, 404 F. App'x 519 (2d Cir. 2010), cert. denied, 10-9617, 2011 WL 1043730 (U.S.

June 20, 2011). Indeed, the Second Circuit has noted that "multiple incidents of discrimination,

even similar ones, that are not the result of a discriminatory policy or mechanism do not amount

to a continuing violation." Hongyan Lu v. Chase Inv. Servs. Corp., 412 F. App'x 413, 416 (2d

Cir. 2011) (emphasis in original) (quoting Lambert, 10 F.3d at 53). Moreover, it is clear that

"discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113.

Few courts have confronted a fact pattern that bears sufficient resemblance to that which Giannattasia asserts presently. In Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130 (2d Cir. 2003), the court was faced with a *single*, untimely request for accommodation that plaintiff claimed caused him harm which continued into the statutory period. The Second Circuit held on those facts that "an employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation" and that such a rejection was "the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days." Id. at 134-35. Perhaps tellingly however, the court explained that "[o]nce the employer has rejected the proposed accommodation, no periodic implementation of that decision occurs." Id. at 135.

More in line with the complaint Giannattasia advances, in Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121 (1st Cir. 2009), the First Circuit confronted multiple requests for accommodation that were repeatedly denied by the employer. However, some of the requests were made before the statutory period, with the remainder occurring within the period, resulting in the holding that "an employee who renews his request for particular accommodations may bring suit based on a new 'discrete act' of discrimination if the employer again denies his request." Id. at 131. The court then framed the inquiry not as whether there was a continuing violation, but "whether any of [plaintiff's] requests for accommodation occurred during the applicable statutory periods." Id. at 133. The First Circuit distinguished Elmenayer, in which "the employers committed one allegedly discriminatory act that had continuous impact on individuals who did not make renewed proposals for accommodation during the applicable limitations periods." Id. at 132. As a result, the First Circuit found that plaintiff had suffered multiple acts of discrimination through

the denial of his repeated requests, and that his claims were timely insofar as plaintiff made specific requests within the statutory period. Id. at 133 & n.10.

In line with the reasoning in both cases, it seems that the relevant question is whether *any* of Giannattasia's continuing violation claims occurred within the statutory period. To begin, it is clear that Giannattasia's physician sent multiple letters to RCDA regarding plaintiff's carpal tunnel syndrome and consequent inability to perform repetitive tasks, starting on June 3, 2006 and continuing through April 12, 2007. Each letter was in furtherance of a separate request for a reasonable accommodation. See Liss v. Nassau Cnty., 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006) ("[T]he Court considers each occasion on which the plaintiff provided the defendants with one of the doctors' notes . . . as a request for accommodation for his medical condition.").[4] Viewed in this light, plaintiff's complaint alleges a discrete but connected act of discrimination each time she sought accommodations and RCDA either provided none, requested clarification, or provided an accommodation that was inadequate or ineffective. Unlike Elmenayer, in this way, plaintiff does not base her cause on a single act of discrimination that predates the statutory period. See Elmenayer, 318 F.3d 134-35. Rather, she claims that she made repeated requests for accommodation—including within the statutory period—which her employer routinely rejected. See Tobin, 553 F.3d at 131 ("[A]n employee who renews his request for particular accommodations may bring suit based on a new 'discrete act' of discrimination if the employer again denies his request."). Because plaintiff's doctor sent two letters within the statutory period, plaintiff's claims are plainly timely with respect to those requests for accommodation.

---

[4] The Court is aware that Liss was decided in the context of a motion to dismiss. However, the Court agrees with Judge Spatt that an employer must construe a doctor's note detailing the extent of an employee's injuries as a request for the employer to accommodate the employee's limitations as described by the doctor. It is hard to imagine an alternative purpose of such a letter if this were not the case. It clearly demonstrates a line of connection between employer and employee covering the subject matter of the note.

The litigation landscape, of course, is broader. Plaintiff cannot pursue relief for her untimely requests, but she may still use her pre-statutory period requests as evidence to prove RCDA's discriminatory conduct within the statutory period. See Morgan, 536 U.S. at 113 ("Nor does the [ADA] bar an employee from using the prior acts as background evidence in support of a timely claim."); see also Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 2(3), 123 Stat. 5 (2009) ("With regard to any charge of discrimination under any law, nothing in this Act is intended to preclude or limit an aggrieved person's right to introduce evidence of an unlawful employment practice that has occurred outside the time for filing a charge of discrimination.").

Insofar as plaintiff also alleges retaliation and termination claims, the identical analytical framework obtains. First, Giannattasia alleges that she was retaliated against for seeking accommodation on account of her disability. To the extent she relies on requests that occurred within the limitations period, plaintiff advances a timely cause of action for any resulting retaliation. Second, Giannattasia's termination cause of action also represents a discrete act that accrued during the limitations period. As to both claims, while pre-statutory period events cannot form the basis for a separate cause of action, they may be used as evidence to prove RCDA's timely-filed discriminatory conduct. See Morgan, 536 U.S. at 113; Pub. L. No. 111-2, § 2(3), 123 Stat. 5 (2009).

2. Hostile Work Environment

As previewed above, hostile work environment claims admit to a very different analysis under the ADA's statute of limitations and continuing violation doctrine. That is because a hostile work environment claim by its "very nature involves repeated conduct." Morgan, 536 U.S. at 115. Certainly, "the 'unlawful employment practice' cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete

10

acts, a single act of harassment may not be actionable on its own." Id. (quotations omitted). Moreover, "the entire hostile work environment encompasses a single unlawful employment practice . . . ." Id. at 117. Therefore, given that a hostile work environment claim accrues over time and embodies a single discriminatory practice, it follows that such claims are timely so long as the employee "file[s] a charge within . . . 300 days of any act that is part of the hostile work environment." Id. at 118.

Here, plaintiff alleges that several of RCDA's actions created a hostile work environment. Giannattasia claims, inter alia, that she received numerous insubordination letters for her failure to mail orders of protection, that she was isolated from her coworkers, that she was ordered to bring in only typewritten medical notes, and that she was harassed continuously by Ms. Collins and Ms. Dalton. At least one of these events—RCDA's February 2007 request that plaintiff provide typewritten medical notes—occurred within the statutory period. (See Zinaman Decl.¶ 53.) To the extent that other events give texture to plaintiff's hostile work environment claim, a factfinder may view the entire picture. So again, though not independently actionable, plaintiff may introduce other evidence tending to show a single unlawful employment practice, regardless of whether such additional evidence is drawn from beyond the statutory period, because she has already met the timeliness threshold with respect to at least one allegation comprising her claim.

## C. **Triable Issues**

### 1. Failure to Accommodate

In order to show discrimination for failure to reasonably accommodate a disability, a plaintiff must prove that "(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable

11

accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009) (citations omitted). For purposes of the instant motion, the Court need not proceed very far in its analysis because there are clearly genuine issues of material fact present. First, the parties disagree about whether RCDA had notice of Giannattasia's disability prior to instituting requirements that involved repetitive motion. In particular, RCDA claims that Giannattasia "disclosed that she had a mild partial disability in her right hand . . . at the . . . meeting[] where she was informed of her new tasks." (Zinaman Decl., at ¶ 32.) However, plaintiff claims that she sent RCDA copies of medical reports between December 16, 2004 and November 15, 2005 which included Dr. Licciardi's assessment that "[p]laintiff was diagnosed with right carpel tunnel syndrome." (Karlin Decl., at ¶ 16.) Second, and more importantly, there are genuine issues of material fact regarding what constitutes a reasonable accommodation under the circumstances of this case, and whether the accommodations that RCDA provided plaintiff were in fact reasonable. Accordingly, defendant's motion for summary judgment on Giannattasia's failure to accommodate claim is denied.

    2. Termination

Plaintiff's termination claim is subject to the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817 (1973); Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002). Under the McDonnell Douglas framework, a plaintiff first must establish a prima facie case of disability discrimination. To do so, the plaintiff must prove "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c)

12

that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008). After a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide "legitimate non-discriminatory reason[s] for the discharge." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). Thereafter, a plaintiff may prove "that the proffered reason is a pretext." Id.

Again, the Court need not wade too deeply into the thicket of conflicting factual assertions. At the last step, there are genuine issues. Whether plaintiff can demonstrate her ability to perform the essential functions of the job with a reasonable accommodation, and whether such reasonable accommodation was actually provided are issues of fact that are material and disputed. Pretext, as a result, is also a disputed fact. Summary judgment is not warranted in these circumstances with respect to the termination claim either.

3. Retaliation

The burden-shifting framework of McDonnell Douglas also applies to this claim—and with the same result. In order to prove retaliation, a plaintiff must show that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Once a plaintiff makes a prima facie case, the burden shifts to the defendant to show legitimate, nondiscriminatory business reasons for the employment action. See Sista, 445 F.3d at 169. Thereafter, plaintiff may again show that the reasons provided are pretextual. See id.

13

Assuming the first three prongs on the <u>prima facie</u> case are met, on the final prong, defendant argues that Giannattasia's claim lacks a temporal proximity between the protected activity and the alleged retaliation. Defendant claims that plaintiff requested an accommodation in June 2006 and resigned in May 2007. Defendant's otherwise accurate recitation overlooks the fact that plaintiff submitted various other requests for accommodation within this timeframe. Indeed, the letter requesting an accommodation submitted last in time by plaintiff was dated April 12, 2007. With temporal proximity cast differently by the parties, battle once again rages at the last prong regarding the causal connection between the alleged adverse action and the protected activity. These are questions for the ultimate finder of fact, not for a court on summary motion.

### 4. Hostile Work Environment

Finally, to sustain a hostile work environment claim, a plaintiff must prove "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 122 (2d Cir. 2003) (citations omitted). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." <u>Brennan v. Metro. Opera Ass'n, Inc.</u>, 192 F.3d 310, 318 (2d Cir. 1999).

Defendant argues that plaintiff cannot show RCDA created a hostile work environment "because of" her disability. However, this is a difficult issue to parse in the summary judgment context. When an employer discriminates against an employee because of a disability, the employer rarely drafts a formal document explaining the details. As a result, evaluating the conduct requires a nuanced understanding of the circumstances and demands that a factfinder

14

draw reasonable inferences based on those facts.

Defendant also claims that plaintiff cannot prove her workplace was "permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment." Mack, 326 F.3d at 122. However, what constitutes "severe" or "pervasive" discriminatory intimidation is left to the trier of fact. Giannattasia alleges that she received weekly insubordination letters for failing to send orders of protection, despite her inability to complete the task due to her disability. She also alleges that she was isolated from co-workers, required to supply typewritten medical notes, and harassed continuously by her supervisors. Viewing these facts in the light most favorable to plaintiff as the nonmoving party, the Court cannot conclude with sufficient certainty that plaintiff was not subjected to a hostile work environment. It is difficult, of course, to say one way or the other whether RCDA created a hostile work environment because of plaintiff's disability. But, the "right" answer is not necessary for Giannattasia to carry the day. At this point, all that is necessary is the presence of a legitimate question arising from material facts in dispute. That is what has been established. This branch of defendant's motion is also denied.

### III.   CONCLUSION

For all the reasons set forth above, defendant's motion for summary judgment is denied in its entirety. The parties are directed to contact United States Magistrate Judge Go to arrange for a pretrial conference and the prompt submission of a final joint pretrial order.

**SO ORDERED.**

Dated: Brooklyn, New York
September 21, 2011

s/ Judge Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge

15